## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSSEAN CRISPIN, | ) | CASE NO. 3:21-cv-885 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL SUSSEL, et al., | ) | JANUARY 3, 2022 |
| *Defendants*. | ) | |

## <u>INITIAL REVIEW ORDER</u>

Kari A. Dooley, United States District Judge:

Plaintiff, Jossean Crispin ("Crispin"), a person previously incarcerated at Cheshire Correctional Institution, filed this civil rights action *pro se* under 42 U.S.C. § 1983 against Discharge Planner Michael Sussel, Counselor Biga, Warden Amanda Hannah, Counselor Supervisor Peireault, Population Management Director Dave Miaga, Counselor John Doe #1, Deputy Warden of Classification & Program Management John/Jane Doe #2, District Administrator John/Jane Doe #3, and Elizabeth Tugie, each in their individual and official capacities. Crispin's claims arise out of his classification as a sex offender and the subsequent refusal by the defendants to provide him with sex offender treatment.[1] He seeks damages as well as declaratory and injunctive relief.[2]

---

[1] Crispin refers to "sexual treatment." The Court assumes that he means "sex offender treatment" and shall accordingly refer to sex offender treatment throughout this Order.

[2] Insofar as Crispin has been released from incarceration, his claims for declaratory and injunctive relief are moot. *See Santiago v. Annucci*, No. 20-CV-4530 (KMK), 2021 WL 4392487, at *8 (S.D.N.Y. Sept. 24, 2021) (dismissing claim for injunctive relief where plaintiff had been released from prison); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (explaining that "[w]here a prisoner has been *released* from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot").

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner

civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails

to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the

truth of the allegations, and interpret them liberally to "raise the strongest arguments [they]

suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623

F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although

detailed allegations are not required, the complaint must include sufficient facts to afford the

defendants fair notice of the claims and the grounds upon which they are based and to demonstrate

a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations

are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On January 10, 2018, Crispin was readmitted to custody after being charged with a sexual

offense. Compl., Doc. No. 1, ¶ 1. Crispin alleges that immediately upon his readmission, he was

"targeted" "biasly and discriminatively" by staff in a "multi-level systemic attack." *Id.* at ¶ 2.

Correctional Officer Fortin referred to Crispin as a child molester and, soon after, attacked

Crispin. *See id.* at ¶ 3. That action is the subject of another of Crispin's lawsuits, *Crispin v. Fortin*,

No. 3:20-cv-1796 (KAD). *See id.* Crispin was transferred to Northern Correctional Institution

("Northern") after several other transfers allegedly made to prevent the State Police from

investigating the alleged attack by Officer Fortin. *See id.* at ¶ 4. While at Northern, Officer Purdy

assaulted and sexually harassed Crispin and "trash[ed]" his cell. *Id.* at ¶ 5. Crispin is pursuing claims based on these actions in another lawsuit as well. *See id.*

As a result of the many incidents reported at Northern, Crispin was placed in Administrative Segregation, which he describes as a solitary confinement program. *See id.* at ¶ 6. The fact that Crispin was charged with a sexual offense was one of the reasons used to support his placement in Administrative segregation. *See id.* at ¶ 7. Crispin alleges that his placement also is the subject of another of his cases, *Crispin v. Reischerl*, No. 3:19-cv-413 (VLB). *See id.*

Dave Miaga, Warden Nick Rodriguez, Elizabeth Tugie, Carlene Davis, Keith Lizon, Gregorio Robles, Brian Jackson, Scott Semple, Shannon Dow, and Craig Purdys are alleged to have falsely placed Crispin in solitary confinement, which the Court assumes to be administrative segregation, and approved his classification for sex offender treatment without a hearing or any process. *Id.* at ¶¶ 8–9.

Crispin did not learn of the requirement for sex offender treatment until March 15, 2019, when Counselor Lata told him to sign a document acknowledging that he had to attend a sex offender treatment group or he would receive a disciplinary report. *Id.* at ¶ 10. Crispin refused to sign the document, claiming that he knew nothing about it. *See id.* This refusal resulted in his "removal." *Id.*

On December 3, 2019, Crispin received notice for a hearing on sex offender treatment based on non-conviction information.[3] *See id.* at ¶ 11. The hearing was scheduled for December 5, 2019. *See id.* Crispin sought a continuance of the hearing, but his request was ignored. *See id.* at ¶ 12. On December 5, 2019, Crispin verbally requested a continuance to adequately prepare for

---

[3] The Court assumes this was a classification hearing.

3

the hearing. *See id.* at ¶ 13. Defendant Doe #1 denied the request during the hearing. *See id.*

Counselor Biga told Crispin that the purpose of the hearing was not to decide whether he should be classified and referred for sex offender treatment. *See id.* at ¶ 14. Counselor Biga and John Doe #1 did not have that authority. *See id.* Instead, they would submit a recommendation to Director Miaga who would make the decision and inform Crispin whether he would be so classified. *See id.*

Crispin submitted three inmate requests seeking a copy of the decision so he could decide whether to appeal but received no response. *See id.* at ¶ 15. On December 20, 2019, Crispin "blindly appeal[ed]" the matter. *Id.* at ¶ 16. When his appeal was ignored, Crispin filed a grievance. *See id.*

After his "false classification" to sex offender treatment, Crispin received no such treatment. *Id.* at ¶ 21. Crispin requested the treatment to ensure the failure to attend treatment would not interfere with his release at the end of his sentence, but no treatment was provided. *See id.* Instead, the Department of Correction threatened to have Crispin civilly committed under a court order allegedly as punishment for his lawsuits. *See id.* at ¶ 22. Mental Health Discharge Planner Sussel and Discharge Planner Domijan told Crispin that if he did not stop filing lawsuits, "higher ups" will seek a court order to civilly commit him. *See id.* at ¶ 23.

**Discussion**

Crispin contends that the Department of Correction denied him sex offender treatment in retaliation for his filing lawsuits. He also argues that the Department of Correction is violating his right to equal protection and his rights under the Americans with Disabilities Act ("ADA") by refusing to provide sex offender treatment programs and threatening to civilly commit him.

Crispin includes a claim against District Administrator William Mulligan, who is not named as a defendant, for failing to investigate the claims asserted in his inmate requests and classification appeal.

**Retaliation**

To state a cognizable First Amendment retaliation claim, Crispin must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93–94. "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001). Courts consider the circumstances of the particular case when evaluating this second element. *See id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees…before a retaliatory action taken against them is considered adverse." *Id.* (internal quotation marks and citation omitted)). A prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan*, 794 F.3d at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352).

Crispin alleges that he was filing lawsuits. Filing lawsuits is a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally

protected activity and will support a retaliation claim). Thus, Crispin has alleged facts to satisfy the first element.

Claims of retaliation invite judicial intrusion into matters of general prison administration. And because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," courts approach retaliation claims with "skepticism and particular care." *Samuels v. Strange*, No. 3:08cv1872 (WIG), 2012 WL 4754683, at *5 (D. Conn. Oct. 4, 2012) (quoting *Dawes*, 239 F.3d at 491 (internal quotation marks omitted)). Crispin alleges that he was denied sex offender treatment because he filed lawsuits. Crispin does not identify any defendant who was responsible for scheduling him for treatment or ensuring that he attended the treatment sessions. He knows only that sex offender treatment was not provided and assumes that some defendant denied the treatment because of his litigation activity. Crispin's assumption is not sufficient to demonstrate adverse action by any named defendant. *See Iqbal*, 556 U.S. at 676 (to state a section 1983 claim, plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Crispin also alleges that he was threatened with civil commitment. Under some circumstances, verbal threats may constitute adverse action. The deciding factors are the degree of specificity of the threats and the context in which the threat is made. *See Treizon Lopez v. Semple*, No. 3:18-CV-1907 (KAD), 2019 WL 2548136, at *4 (D. Conn. June 20, 2019) (citations omitted). "[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purposes of a First Amendment retaliation claim." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007); *see also Dawes*, 239 F.3d at 493 ("Not every unnecessary statement

of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

Although the Court has not located any reported cases involving a threat of civil commitment proceedings, other threats have been held insufficient to constitute adverse action. *See Torres v. Wright*, No. 3:17-cv-01919 (JAM), 2018 WL 1175408, at *5 (D. Conn. Mar. 6, 2018) (threatening to place plaintiff in punitive segregation if he did not stop complaining insufficient to constitute adverse action); *King v. McIntyre*, No. 9:11-CV-1457, 2015 WL 1781256, at *21 (N.D.N.Y. Apr. 8, 2015) (threats that plaintiff would "have a hard time" in facility and would receive "special treatment" in restrictive housing insufficient to constitute adverse action); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 432–34, (S.D.N.Y. 2010) (finding no adverse action where correctional officer twice threatened inmate-plaintiff with physical violence for writing grievances, including one incident where officer entered plaintiff's cell, "held his right gloved fist [to plaintiff's] face, [and] threatened [him] by saying that one day he and [plaintiff] will party"); *Kemp v. LeClaire*, No 03-CV-844S, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats from correctional official that plaintiff's "day was coming," that he would "be sent to [his] mother in a black box" and that he would "get [his] black ass kicked" insufficient to support retaliation claim); *Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (verbal threat, "we are going to get you, you better drop the suit" not adverse action); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237–38 (W.D.N.Y. 2005) (official's statement that there were "no secrets in prison" and that plaintiff would "have to pay the consequences" for filing grievance insufficient to support retaliation claim).  Here, Crispin alleges that defendant Sussel told him that "higher ups" would seek a court order for civil commitment if Crispin did not stop filing lawsuits.

Defendant Sussel did not threaten any action himself and Crispin does not allege that any defendants sought such a court order. The fact that prison officials made threats but did not carry through with the threatened actions, "while not dispositive, weighs against a finding that [the] alleged threat constitutes adverse action." *Treizon Lopez*, 2019 WL 2548136, at \*5 (citing *Alicea*, 387 F. Supp. 2d at 237).

In addition, the courts generally require some additional injury to support a retaliation claim. *See Gill,* 389 F.3d at 383 ("plaintiff asserting First Amendment retaliation [claim] must allege some sort of harm."). *Compare Pledger v. Hudson,* No. 99 Civ. 2167 LTSTHK, 2005 WL 736228, at \*4–5 (S.D.N.Y. Mar. 31, 2005) (correctional officer's issuance of unfavorable evaluation and threat to place prisoner in special housing unit insufficient to state retaliation claim) *with Gill*, 389 F.3d at 384 (false misbehavior report resulting in sanction of placement in restrictive housing for three weeks constitutes adverse action). Crispin does not identify any harm that he suffered as a result of the threat. Crispin has not alleged sufficient facts to show that he was subjected to adverse action by any defendant. Accordingly, the retaliation claim is dismissed without prejudice.

If Crispin wishes to pursue this claim, he must allege facts showing that he was subjected to adverse action, identify the defendant who took the adverse action against him, and allege facts showing that the adverse action was taken because he filed lawsuits.

**ADA**

Crispin contends that the Department of Correction violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., by denying him sex offender treatment. The Department of Correction is not named as a defendant. Thus, Crispin cannot assert a claim

against it. In addition, even if the Court were to construe this claim as asserted against the defendants in their official capacities, the claim fails.

To state a prima facie case for discrimination under the ADA, Crispin must allege: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *see also Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing elements of ADA in prison context).

Crispin alleges no facts in the complaint suggesting that he is a qualified individual with a disability or that the decision not to provide sex offender treatment was due to any such disability. Absent same, he has not stated a plausible ADA claim. Any ADA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Equal Protection**

Crispin argues that the Department of Correction denied him equal protection by refusing to provide sexual treatment and attempting to civilly commit him. Again, the Department of Correction is not a defendant. Notwithstanding, the claim also fails on the merits.

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injury a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980) (emphasis omitted)). To state a plausible equal protection claim, therefore, Crispin must allege

facts showing that he was treated differently from other similarly situated inmates and that the disparate treatment was due to one of these impermissible reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209 (JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

An equal protection claim also may be based on a claim that the inmate has been "irrationally singled out as a class of one." *Id.* (citation and internal quotation marks omitted). "To succeed on such a claim, plaintiff[] must show an extremely high degree of similarity between [himself] and the person to whom [he] compare[s himself]." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citation and internal quotation marks omitted).

Crispin does not identify any inmate similarly situated to himself who was treated differently. Thus, he fails to allege facts to support either type of equal protection claim. The equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Failure to Investigate**

Crispin includes a claim against District Administrator William Mulligan for failing to investigate the claims asserted in his inmate requests and classification appeal but has not named District Administrator Mulligan a defendant. Crispin has included District Administrator John/Jane Doe #3 as a defendant. Although it appears unlikely that Crispin would name District Administrator John/Jane Doe as a defendant if he intended to include District Administrator Mulligan, a man whose name he knew, the Court assumes for purpose of initial review only that Doe #3 is Mulligan.

Inmates have no constitutional right to have their claims of improper conduct by correctional staff investigated. *See Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 787929, at *7 (D. Conn. Oct. 31, 2019) ("Plaintiff does not have a protected liberty interest in having

10

correctional officials investigate his complaints, through the grievance process or otherwise."); *see also Davila v. Messier*, No. 3:13-cv-81 (SRU), 2014 WL 4638854, at *8 (D. Conn. Sept. 17, 2014) ("[The inmate] does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) ("prisoners do not have a due process right to a thorough investigation of grievances"). Thus, if District Administrator Mulligan failed to properly investigate inmate requests, he did not violate Crispin's constitutional rights.

Crispin's right to an appeal of a classification decision, like the right to file grievances and appeal adverse grievance decisions, is provided in Administrative Directive 9.6, entitled Inmate Administrative Remedies. *See* www.portal.ct.gov/DOC/AD/AD-Chapter-9. Inmates have no constitutional right to administrative remedy procedures, to receive a response to an administrative remedy, or to have an administrative remedy properly processed or investigated. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes…create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). As Crispin has no federal constitutional right to a classification appeal, District Administrator Mulligan's alleged failure to properly investigate that appeal does not state a cognizable claim. Any claim against District Administrator Mulligan is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

Crispin's ADA and equal protection claims and any claim against District Administrator Mulligan are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The retaliation claim is

**DISMISSED** without prejudice to Crispin filing an amended complaint to reassert this claim. If Crispin chooses to do so, he must identify the appropriate defendant for this claim and allege facts correcting the deficiencies identified above. Any amended complaint shall be filed on or before **February 3, 2023**. If no amended complaint is timely filed, the Clerk is directed to close this case.

       **SO ORDERED** this 3rd day of January 2023 at Bridgeport, Connecticut.

                             *Kari A. Dooley*

                             KARI A. DOOLEY

                             UNITED STATES DISTRICT JUDGE